UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ASHLEY VANNIER,

                                                *Plaintiff*,

        -against-                                       1:24-CV-00324

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SERVICES and      (DNH)(DJS)
GREAT MEADOW CORRECTIONAL FACILITY,

                                               *Defendants*.
_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and (6)**

                                                 **LETITIA JAMES**
                                                 Attorney General
                                                 State of New York
                                                 Attorney for Defendants
                                                 The Capitol
                                                 Albany, New York 12224-0341

Alexander Powhida
Assistant Attorney General, of Counsel

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………..1

STATEMENT OF FACTS…………………………………………………………………...2

STANDARD OF REVIEW…………………………………………………………………..5

ARGUMENT………………………………………………………………………………...5

      POINT I:      PLAINTIFF'S SECOND CAUSE OF ACTION UNDER
THE NEW YORK STATE HUMAN RIGHTS LAW
MUST BE DIMISSSED………………………...…………………5

      POINT II:     ANY TITLE VII CLAIM ARISING OUT OF ACTS OF
DISCRIMINATION THAT ALLEGELY OCCURRED MORE
THAN THREE HUNDRED DAYS BEFORE PLAINTIFF
FILED HIS CHARGE OF DISCRIMINATIN WITH THE
EEOC MUST BE DISMISSED AS UNTIMELY……………………….7

      POINT III:    ANY CLAIMS ARISING OUT OF ACT OF DISCRIMINATION
THAT ALLEGELY OCCURRED MORE THAN THREE YEARS
BEFORE PLAINTIFF COMMENCED THIS ACTION UNDER THE
NEW YORK HUMAN RIGHTS LAW MUST BE
DISMISSED AS UNTIMELY……………………………………….11

CONCLUSION………………………………………………………………………………12

# **TABLE OF AUTHORITIES**

*Cases*

*Allessi v. New York State Dept. of Corrections and Community Supervision*,
16 F. Supp. 3d 221 (W.D.N.Y. 2014)……………………………………………………..6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)……………………………………………………5

*Beattie v. Farnsworth Middle School*, 143 F. Supp. 2d 220 (N.D.N.Y. 1998)……………..7, 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………………………5

*Biro v. Conde Nast*, 807 F.3d 541 (2d Cir. 2015)…………………………………………5

*Briggs v. New York State Dep't of Transp.*, 233 F. Supp. 2d 367 (N.D.N.Y. 2002)……………...7

*Brown v. New York*, 975 F. Supp. 2d 209 (N.D.N.Y. 2013)………………………………….6

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)……………………………………1

*Daniel v. Long Island Housing Partnership, Inc.*,
2009 WL 702209 (E.D.N.Y. Mar. 13, 2009)………..…………………………………………….8

*Deadwiley v. New York State Office of Children & Family Services*,
97 F. Supp. 3d 110 (S.D.N.Y. 2021)……………………………………………………………...6

*Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743 (2002)……………….6

*Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455 (S.D.N.Y. 2005)……………....…7, 11

*Gregory v. Daly*, 241 F.3d 687 (2d Cir. 2001)……………………………………………………1

*International Audiotext Network, Inc. v. American Tel. & Tel. Co.,*
62 F.3d 69 (2d Cir. 1995)………………………………………………………………………….1

*Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1005 (2d Cir. 1986)………………………………1

*Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11 (2d Cir. 2013)…………………..5, 9

*Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993)……………………………………………9

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)…………………………………………1

*Moshenko v. State Uni. Of New York at Buffalo*,
2009 WL 5873236 (W.D.N.Y. Sept. 16, 2009)……………………………………...……7

*Murphy v. Am. Home Prods. Corp.*, 58 N.Y. 2d 293 (1983)…………………………………….11

*Nat'l R.R. Passenger Corp. v . Morgan*, 536 U.S. 101 (2002)…………………………….....7, 8

*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206 (2d Cir. 2004)………………………..…9

*Pazamickas v. New York State Office of Mental Retardation & Dev. Disabilities*,
963 F. Supp. 190 (N.D.N.Y. 1997)…………………………………………………………..6

*Pikulin v. City Univ. of New York*, 176 F.3d 598 (2d Cir. 1999)…………………………………8

*Raygor v. regents of the Univ. of Minn.*, 534 U.S. 533 (2002)………………………………….6

*Rivera v. Prudential Insurance Co.*, 1996 WL 637555 (N.D.N.Y. Oct. 21, 1996)…………......9

*Roberts v. New York*, 911 F. Supp. 2d 149 (N.D.N.Y. 2012)……………………….………….6

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)……………………………………………..1

*Saba v. Cuomo*, 535 F. Supp. 3d 282 (S.D.N.Y. 2021)………………………………….....5

*Serrano v. New York State Dep't of Envtl. Conservation*,
2013 WL 6816787 (N.D.N.Y. Dec. 20, 2013)…………………………………………………7

*Smith v. State Univ. of New York*, 2003 WL 1937208 (N.D.N.Y. Apr. 23, 2003)……….……..5, 6

*Wharton v. State Univ. of New York at Buffalo*,
2010, WL 5844007 (W.D.N.Y.  Feb. 17, 2010)……………………………………………..7

*Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444 (E.D.N.Y. 2002)………………..……6

<u>Constitutions</u>

U.S. Constitution, Eleventh Amendment ………………………………………………..5, 6

<u>Statutes</u>

42 U.S.C. §2000e-5…………………………………………………………………..…2, 7

Fed. R. Civ. P. 12……………………………………………………………………….1, 2

N.Y. C.P.L.R. 214……………………………………………………………………..11

N.Y. Exec. L. §296 …………………………………………………………………...……..2, 5

## PRELIMINARY STATEMENT

Defendants, New York State Department of Corrections and Community Supervision (incorrectly named herein as "New York State Department of Corrections and Community Services") ("DOCCS") and Great Meadow Correctional Facility ("GMCF") (collectively, "Defendants"), submit this Memorandum of Law in support of their motion, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), seeking partial dismissal of the Complaint.

Plaintiff Ashley Vannier ("Plaintiff") alleges that he was discriminated against in his employment with the Defendants based upon gender identity. *See* ECF No. 1, p. 1. Plaintiff asserts that he was subjected to a hostile work environmental and discriminated against beginning in 2013 after he began the process of transitioning from a female to a male, and again in and around 2018 (and at points following) after he came out as a male and asked his co-workers to refer to him as such. *See* ECF No. 1 at ¶¶2 and 3. Between 2013 and 2022, Plaintiff alleges various isolated, separate and specific events of alleged discriminatory conduct based upon his gender identity. *See generally* ECF No. 1. On August 4, 2022, Plaintiff alleges to have been subjected to a further act of harassment, the result of which compelled him to take medical leave from which he never returned, resulting in his termination of employment from DOCCS. *See* ECF No. 1, at ¶¶132-149.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about October 10, 2022. *See* Powhida Decl., Ex. A.[1] On December 8, 2023, the

---

[1] Under Rule 12, the Court may consider documents referenced in the complaint but not annexed thereto, and documents which plaintiff has necessarily relied upon and/or incorporated into the pleading by reference. *See e.g., Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). The Court may consider such materials without converting a motion to dismiss into one for summary judgment. *See International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Gregory v. Daly*, 241 F.3d 687, 691 (2d Cir. 2001). Further, the Court may consider documents that are "integral" to the complaint, even if they are neither physically attached nor incorporated by reference to the complaint. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is "integral" to the complaint when the plaintiff "relies heavily upon its terms and effect." *Int'l Audiotext*, 62 F.3d at 72.

1

EEOC issued a right to sue letter. *See* ECF No. 1 at ¶24. Plaintiff then commenced this action pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e *et seq.*, and the New York State Human Rights Law, New York Executive Law §296, *et seq.*, asserting that Defendants discriminated against him based upon his gender identity. *See generally* ECF No. 1.

Defendants now move for an order partially dismissing the Complaint. First, Plaintiff's HRL claim is barred by the Eleventh Amendment doctrine of sovereign immunity. Second, Plaintiff's Title VII claim is barred in part by the applicable 300-day statute of limitations. And, third, Plaintiff's HRL claim is barred in part by the 3-year statute of limitations.

## STATEMENT OF FACTS

Plaintiff is a former employee of DOCCS, assigned to work at GMCF.[2] ECF No. 1, at ¶1, 21. At the time of his employment by DOCCS, Plaintiff presented as a woman and commenced working as such. *Id.*, at ¶¶1,2.

In 2013, Plaintiff began taking testosterone and commenced a series of surgeries in the process of transitioning to reflect Plaintiff's gender identity as a man. *Id.*, at ¶2. In the fall of 2013, Plaintiff informed a supervisor that he was about to begin surgical procedures for the transition and requested a transfer from the women's locker room to the men's locker room and an update of his personnel records to reflect a male identity. *Id.*, at ¶33. Plaintiff alleges to have been ordered by his supervisor to refrain from speaking about the transition process and to await his final transition surgery before requesting workplace changes. *Id.*, at ¶34.

During the transition process, which occurred over a number of years, Plaintiff's co-workers noticed changes in Plaintiff's appearance. *Id.*, at ¶¶37-43. Plaintiff asserts that various co-workers expressed transphobic beliefs and co-workers in the women's locker room expressed their

---

[2] For purposes of this FRCP 12(b) motion to dismiss, Defendants treat all factual allegations in the Complaint as true.

2

feeling that Plaintiff was unwelcome. *Id.* Since Plaintiff was unable to utilize the men's locker room, he resorted to arriving early to work to utilize the women's locker room alone. *Id.*, at ¶¶42-44.

In 2018, Plaintiff began to disclose to his co-workers that Plaintiff was a transgender man and he asked his supervisors and co-workers to refer to him by male pronouns. *Id.* at ¶45. Plaintiff asserts that after "coming out" some unspecified co-workers' ceased speaking with him and that an unspecified number of employees refused to use male pronouns. *Id.* at 45-47. He alleges that, as a result, the male prison population learned of Plaintiff's transition, thereby subjecting Plaintiff to verbal abuse by the incarcerated population and putting Plaintiff at greater risk of assault. *Id.* at ¶¶47-51.

After publicly disclosing his transgender status in 2018, Respondents allowed Plaintiff to utilize the men's locker room. *Id.*, at ¶55. Plaintiff asserts that, one-week after the move to the men's locker room, his locker was vandalized, which he asserts was related to his transgender identity. *Id.*, at ¶55-57. Plaintiff asserts that he was subjected to various derogatory language graffitied on the walls of the men's locker room, also taking place in 2018. *Id.*, at ¶¶58-61.

Following these events, while Plaintiff claims to have been subjected to various unspecified instances of harassing comments from 2018 through 2022, Plaintiff alleges only six additional specific, isolated events of alleged discriminatory actions described in the Complaint. *Id.* at ¶¶62-149".

First, in January 2018, Plaintiff claims that he was denied a "Relief Position" as a result of his transgender status. *Id.* at ¶¶72-76. However, after grieving the determination, Plaintiff was awarded the position, which he held from September 2018 until September 2019. *Id.* at ¶¶77-79.

3

Second, Plaintiff asserts a co-worker sent him a derogatory Facebook message on March 3, 2019. *Id.*, at ¶63.

Third, Plaintiff also claims that his supervisor made a negative personnel evaluation of him in 2019. *Id.*, at ¶87-95. Specifically, he asserts that as a result of complaining that his supervisor mis-gendered him, that his evaluation was lowered from its prior "excellent" to a "good" rating. *Id.*, at 92. After complaining to his supervisor's superior, however, the 2019 evaluation was subsequently changed to "excellent" in all aspects of his work, but which Plaintiff did not believe was added to his personnel file. *Id.*, at 94-95.

Fourth, in September 2019, Plaintiff applied for and obtained a new position working in the Property Room. *Id.*, at 100-102. Plaintiff claims to have been pulled out of the Property Room position on April 25, 2021 and subjected to a verbal tirade by a supervisor. *Id.*, at 111-117. Following this incident Plaintiff took a brief leave of absence from work returning in May of 2021. *See id.* at ¶¶116-117.

Fifth, he alleges to have subjected to a verbal assault by a co-worker on August 1, 2021. *Id.* at ¶¶68-71.

Plaintiff thereafter suffered a heart attack on February 8, 2022, resulting in a short medical leave. *Id.* at ¶¶119-121. Plaintiff returned to work in March 2022 and continued working at GMCF until August 4, 2024, when the sixth specific alleged incident took place. Plaintiff asserts that he was removed from his Property Room position and ordered to a new position, which was located in an unhygienic area, with unacceptable work conditions. *Id.* at ¶¶132-142. Upset by the move and feeling unwell, Plaintiff left that day to seek medical treatment and has been unable to return to work following the incident. *See id.* at 149.

4

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) and (6) provide that a party may move to dismiss a complaint where there is a lack of subject matter jurisdiction and where the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1) and (6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal quotations and citations omitted). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 678. "Naked assertions" or "conclusory statements" are insufficient to make out a claim. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). All factual allegations made in the complaint are assumed to be true, but this does not extend to legal conclusions. *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 13 (2d Cir. 2013).

## ARGUMENT

### POINT I

**PLAINTIFF'S SECOND CAUSE OF ACTION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW MUST BE DISMISSED**

In the second cause of action, Plaintiff asserts a cause of action under N.Y. Executive Law §296, known as the New York State Human Rights Law. ECF No. 1, ¶¶167-172. Plaintiff may not maintain this cause of action against Defendants because Defendants are immune from suit in federal court under the Eleventh Amendment of the United States Constitution. *See Smith v. State Univ. of New York*, 2003 WL 1937208, at *7 (N.D.N.Y. Apr. 23, 2003); *Saba v. Cuomo*, 535 F.

Supp. 3d 282, 299-300 (S.D.N.Y. 2021); *Deadwiley v. New York State Office of Children & Family Services,* 97 F. Supp. 3d 110, 116-117 (E.D.N.Y. 2015); *Allessi v. New York State Dept. of Corrections and Community Supervision*, 16 F. Supp. 3d 221, 225-226 (W.D.N.Y. 2014).

"The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity." *Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013).

"It is well settled that 'the Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.'" *Winokur v. Office of Court Admin*, 190 F. Supp. 2d 444, 450-451 (E.D.N.Y. 2002) (quoting *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 540-541 (2002)). "[T]he district courts in this Circuit have repeatedly held that the New York Human Rights Law does not include a waiver of the State's sovereign immunity to suit in federal court." *Smith*, 2003 WL 1937208, at *7 (internal quotation marks omitted). "Nothing in the [New York Human Rights Law] provides any basis for finding that New York State has waived Eleventh Amendment immunity thereunder." *Pazamickas v. New York State Office of Mental Retardation & Dev. Disabilities*, 963 F. Supp. 190, 196 (N.D.N.Y. 1997) (McAvoy, J.).

Here, dismissal of the New York Human Rights Law claim is required regardless of whether Plaintiff seeks monetary or equitable relief. "[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 765 (2002). "Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiff's claims asserted against the State of New York and its agencies." *Roberts v. New York*, 911 F. Supp. 2d 149, 159-160 (N.D.N.Y. 2012).

Accordingly, Plaintiff's claim premised upon the New York Human Rights Law must be dismissed for lack of subject matter jurisdiction. *See Serrano v. New York State Dep't of Envtl. Conservation*, 2013 WL 6816787, at *14 (N.D.N.Y. Dec 20, 2013); *Moshenko v. State Uni. of New York at Buffalo*, 2009 WL 5873236, at *4 (W.D.N.Y. Sept. 16, 2009), *adopted*, *Wharton v. State Univ. of New York at Buffalo*, 2010 WL 11685390 (W.D.N.Y. Feb. 17, 2010); *Briggs v. New York State Dep't of Transp.*, 233 F. Supp. 2d 367, 373 (N.D.N.Y. 2002).

## POINT II

### ANY TITLE VII CLAIMS ARISING OUT OF ACTS OF DISCRIMINATION THAT ALLEGEDLY OCCURRED MORE THAN THREE HUNDRED DAYS BEFORE PLAINTIFF FILED HIS CHARGE OF DISCRIMINATION WITH THE EEOC MUST BE DISMISSED AS UNTIMELY

42 U.S.C. §2000e-5 provides that:

> (1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State of local agency has terminated the proceedings under the State or local law, whichever is earlier.

42 U.S.C. §2000e-5; *see Beattie v. Farnsworth Middle School*, 143 F. Supp. 2d 220, 226 (N.D.N.Y. 1998); *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 467 (S.D.N.Y. 2005) (dismissing part of claim that asserted violations occurring earlier than the 300-day statute of limitations).

   A.   *Events More than 300-Days Before Plaintiff filed his EEOC Charge are Barred.*

In New York, Title VII requires a plaintiff to file an administrative charge of discrimination with the EEOC no more than 300 days after the alleged discrete discriminatory or retaliatory act to maintain an action in federal court.  *See* 42 U.S.C. § 2000e-5(e); *see also Nat'l R.R. Passenger Corp.*

7

*v. Morgan*, 536 U.S. 101, 109-110 (2002) (To pursue a judicial remedy for an alleged violation of Title VII, an individual must file a complaint within the time period set forth in Title VII); *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir.1999) (In New York, which has a state agency that has authority to grant or seek relief with respect to discriminatory employment actions, a plaintiff must file a complaint with the EEOC within three hundred days of the discriminatory act if she wishes to pursue a federal claim). This statutory requirement is "strictly enforced." *See Daniel v. Long Island Housing Partnership, Inc.*, 2009 WL 702209, at *8 (E.D.N.Y. Mar. 13, 2009) (citing *Morgan*, 536 U.S. at 108). "A claim is time barred if it is not filed within these time limits." *Morgan*, 536 U.S. at 109. This time restriction applies to each discrete act of discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire," as well as disciplinary actions such as suspensions and the denial of training. *Id.* at 114.

Here, Plaintiff's Charge of Discrimination was filed with the EEOC on or about October 10, 2022. *See* Powhida Decl., Ex. A. Using the date of the EEOC charge means that any alleged discriminatory or retaliatory acts which occurred before December 14, 2021, are barred as untimely. Despite this stringent time constraint, the Complaint references alleged discrete acts of discrimination or retaliation dating back to December 2013, far outside the permissible time period. The Complaint also alleges events in 2018, when he alleges vandalization of his locker in the men's locker room and then derogatory graffiti. Beyond these incidents, of the Complaint's additional alleged specific acts of harassment asserted by Plaintiff, all but one occurred earlier than December 14, 2021.

The initial denial of his application for the for a position occurred in 2018, and was remedied that same year. The asserted derogatory Facebook message was also in 2018. Plaintiff's complaint about his performance evaluation took place in 2019, and was remedied that same year.

8

One of the two instances of verbal abuse asserted by Petitioner occurred in 2019, as well. The second specific instance of verbal abuse occurred on April 25, 2021. All of these separate events, occurring over 9-year span, took place well outside of the 300-day time limit under Title VII and should not be considered. *See Patterson v. County of Oneida, N.*Y., et al., 375 F.3d 206, 220 (2d Cir. 2004) (Title VII precludes recovery for discrete acts that occur outside the statutory time period even if other acts of discrimination occurred within time period). As such, as concerns the specific instances cited, Plaintiff's claim should be barred by the applicable limitations period.

Furthermore, while Plaintiff makes various assertions of being the subject of daily comments constituting a hostile work environment, he does not allege any such comments within the 300-day period, which should preclude that assertion from proceeding as well.

      B.     *There is No Continuing Violation.*

To the extent Plaintiff may argue that the time-barred acts constitute a continuing violation such that the statute of limitations does not bar the claims, there is no basis for application of the doctrine. "'Where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy,' a continuing violation may be found. *Beattie*, 143 F. Supp. 2d at 226. The continuing violation exception to the statute of limitations "is considered 'disfavored' in the Second Circuit and only to be applied 'upon a showing of compelling circumstances.'" *Id.*, at 227; *see also Rivera v. Prudential Insurance Co.*, 1996 WL 637555, *6 (N.D.N.Y. Oct. 21, 1996). "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation" such that they will not be considered if occurring outside of the statute of limitations. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).

9

In *Beattie*, the court analyzed a complaint by a teacher that she was subjected to unwanted instances of physical contact, such as hugs and kisses, and of non-physical harassment, such as leers, staring, and negative comments, extending beyond the 300-day statute of limitations. The court concluded that conduct within and outside of the 300-day window was not repetitious and was more in the nature of isolated events, that nature of the acts falling outside of the 300-day period were of such a nature that the complainant should have put her on notice to assert her rights, and that adverse consequences of the acts were such that they would expect to be felt without any continuing intent to discriminate. *See Beattie*, 143 F. Supp.2d at 226-228. The court pointed out that the alleged harassment was of such a nature that Plaintiff should have been aware of the need to assert her rights by filing a complaint with the EEOC, "[y]et she refrained from filing an EEOC complaint until approximately two years after the alleged incidents." *Id.* at 227.

Here, Plaintiff alleges various events over the course of nine-years that would have put him on notice of the need to assert his rights by filing a complaint with the EEOC, yet he did nothing. In 2013, he was not allowed to use the locker room of his determined gender and was subjected to asserted negative comments for continuing to use the women's locker room, such that he began using it at odd hours to avoid the situation. In 2018, he was in fact allowed to use the men's locker room and he was confronted with an asserted vandalized locker and negative graffiti. He asserts specific instances, though remedied, where adverse employment decisions were made. First, he claims a denied promotion in 2018, which was later granted upon asserting a union grievance. Second, he claims a 2019 negative performance evaluation due to insisting upon his preferred pronouns being used, which was also asserted to be corrected. Other instances of specific negative comments or verbal abuse allegedly occurred on specific days over a span of four-years. Plaintiff alleges that such comments resulted in his own anxiety. This reveals that Plaintiff understood those

comments to be actionable such that he would have been expected to assert the claim that his rights were violated and to file a complaint with the EEOC. He failed to do so.

Only with respect to the August 4, 2022 incident did Plaintiff timely act to make a complaint to the EEOC. As such, all conduct other than that incident should be barred by the statute of limitations and the Complaint dismissed as to those allegations.

POINT III

**ANY CLAIMS ARISING OUT OF ACTS OF DISCRIMINATION THAT ALLEGEDLY OCCURRED MORE THAN THREE YEARS BEFORE PLAINTIFF COMMENCED THIS ACTION UNDER THE NEW YORK HUMAN RIGHTS LAW MUST BE DISMISSED AS UNTIMELY**

Claims under the HRL are governed by a three-year statute of limitations. *See* N.Y.C.P.L.R. §214(2); *see also Fleming*, 419 F.Supp. 2d at 467, *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 306-07 (1983).

If the Court allows the HRL claim to proceed, many of the alleged discriminatory acts underlying such claim should be dismissed because they are outside of the three-year statute of limitations under the HRL. This action was commenced on March 6, 2024, which means that any alleged discriminatory acts which occurred before March 6, 2022, are barred as untimely. As noted above, Plaintiff's Complaint references alleged acts of discrimination or retaliation dating back to 2013. As with the Title VII claims, any alleged "discrete acts" of retaliation arising prior to March 6, 2022, fall outside the statute of limitations and should be dismissed as untimely.

11

## CONCLUSION

By reason of the foregoing, Defendants' motion must be granted in its entirety and Plaintiff's claims against the Defendants dismissed in their entirety.

Dated: Albany, New York
July 5, 2024

Respectfully submitted,

**LETITIA JAMES**
Attorney General
State of New York
Attorney for Defendants

By: *s/Alexander Powhida*
Alexander Powhida
Assistant Attorney General
Bar Roll No. 105395
Telephone: (518) 776-2584
Email: Alex.Powhida@ag.ny.gov

TO: *Via ECF*
Allegra L. Fishel, Esq.
*Attorney for Plaintiff*
GENDER EQUALITY LAW CENTER
157 13TH Street
Brooklyn, New York 11215