UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ASHLEY VANNIER,

                                        Case No. 1:24-cv-00324 (DNH)(DJS)

                  *Plaintiff*,


        - against -


NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SERVICES and GREAT MEADOW
CORRECTIONAL FACILITY,

                  *Defendants*.
----------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


                                      **GENDER EQUALITY LAW CENTER**
                                      157 13th Street
                                      Brooklyn, New York 11215
                                      Tel: (347) 844-9003
                                      *Attorneys for Plaintiff, Ashley Vannier*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION...........................................................................................................1

FACTS.........................................................................................................................3

LEGAL ARGUMENT......................................................................................................7

   A.  Standard for a Motion to Dismiss........................................................................7

   B.  Plaintiff's Title VII Claims Are Timely in Their Entirety and Should Not Be
       Dismissed.........................................................................................................8

      1.  Vannier Was Harassed and Discriminated Against on the Basis of His
           Gender Beginning Years Before the 300 Day Look Back Period and
           Continuing Until the End of His Employment.............................................9

      2.  Discrete Actions Which Took Place Before the 300 Day Look Back Period
           May Be Considered as Part of the Ongoing Hostile Work Environment
           Vannier Experienced During His Employment..........................................10

      3.  Plaintiff's Constructive Discharge on August 4, 2022 Was the Culmination
           of Years of Overt Hostility and Abuse Vannier Suffered at the Prison on
           the Basis of His Gender Identity……….....................................................14

CONCLUSION...............................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................7, 17

*Aurecchione v. Schoolman Transp. Sys.*,
426 F.3d 635 (2d Cir. 2005) ..............................................................................8

*Beattie v. Farnsworth Middle Sch.*,
143 F. Supp. 2d 220 (N.D.N.Y. 1998) ............................................9, 12, 13, 14

*Berry v. Bd. of Supervisors of L.S.U.*,
715 F.2d 971 (5th Cir. 1983) .....................................................................12, 13

*Caravantes v. 53rd St. Partners, LLC*,
No. 09 Civ. 7821 (RPP), 2012 U.S. Dist. LEXIS 3665 (S.D.N.Y. Jan. 11, 2012) ..........14

*Fichera v. State Univ. of N.Y.*,
No. 5:04-cv-0078, 2007 U.S. Dist. LEXIS 72186 (N.D.N.Y. Sept. 27, 2007) ..................3

*Jattan v. Queens Coll. of City Univ. of N.Y.*,
64 A.D.3d 540 (2d Dep't 2009) .........................................................................1

*King v. Aramark Servs.*,
96 F.4th 546 (2d Cir. 2024) ...........................................................2, 11, 14, 15

*Lugo-Young v. Courier Network, Inc.*,
No. 10-CV-3197 (RRM)(LB), 2012 U.S. Dist. LEXIS 33562
(E.D.N.Y. Mar. 13, 2012) ...................................................................................2

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir. 2010) ..............................................................................15

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)......................................................2, 8, 9, 12, 13, 14

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001) ........................................................................7, 17

*Petrosino v. Bell Atl.*,
385 F.3d 210 (2d Cir. 2004) .........................................................................2, 9

*Spencer v. Global Innovative Grp., LLC*,
No. 17 Civ. 7604 (PGG) (BCM), 2023 U.S. Dist. LEXIS 184012

(S.D.N.Y. Oct. 12, 2023)...........................................................................................7

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)...........................................................................................7

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996) ...........................................................................2, 15

*Watson v. Am. Red Cross Blood Servs.*,
    468 F. Supp. 2d 484 (W.D.N.Y. 2007) ...........................................................7, 8

**Constitutions**

U.S. Constitution, Eleventh Amendment.....................................................................1

**Statutes**

New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq*.....................................1, 2, 7, 17

Title VII of the Civil Rights Act of 1964,
    42 U.S.C.S. § 2000e *et seq*.......................................1, 2, 8, 10, 11, 12, 13, 14, 17

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 2, 7

## INTRODUCTION

Plaintiff, Ashley Vannier ("Vannier"), by his counsel, submits this Memorandum of Law in support of his Opposition to the Motion to Dismiss filed by Defendants New York State Department of Corrections and Community Supervision ("DOCCS")[1] and Great Meadow Correctional Facility ("GMCF") (collectively "Defendants") pursuant to Rules 12(b)(1) and 12(b)(6) on July 5, 2024.

Defendants first argue that this Court should dismiss Plaintiff's claims brought under the New York State Gender Expression Non-Discrimination Act, a 2019 amendment to the New York State Human Rights Law. This argument is premised on Defendants' claim that New York State cannot be sued in federal court without waiving its Eleventh Amendment immunity; which to date it has not. In response, Plaintiff agrees to the Court's dismissal of his New York State Human Rights Law claim, without prejudice, in order that he may refile his state law claims in New York State Court. *See Jattan v. Queens Coll. of City Univ. of N.Y.,* 64 A.D.3d 540, 541 (2d Dep't 2009) ("The State Legislature waived sovereign immunity [for suit in state court] when it passed the New York State Human Rights Law and made its provisions applicable to the State.").

Defendants also move to dismiss Plaintiff's Title VII hostile work environment claims, based on conduct which arose before the 300-day look-back period prior to Vannier filing his Charge of Discrimination with the United States Equal Employment Opportunity Commission

---

[1] Defendants claim that Plaintiff incorrectly named the first Defendant in this matter (Defendants' Memorandum of Law in support of their Motion to Dismiss, p. 1). Clearly this was inadvertent on Plaintiff's part. With the Court's approval, Plaintiff will amend the caption of this case to reflect the caption to read: Ashley Vannier v. New York State Department of Corrections and Community Supervision, et al.

("EEOC") ("the 300-day Rule)[2] as untimely.[3]  Defendants' Memorandum of Law in Support of their Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Defs' MOL"), at pp. 7-11.  Defendants' assertion that this statutory bar should be applied to all conduct except Vannier's constructive discharge claim should be denied.

As recognized by the United States Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) and adopted by its progeny in this Circuit, the "continuing violation doctrine" creates an exception to the 300-day rule.  Under the doctrine, if "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice, a continuing violation may be found."  *King v. Aramark Servs.,* 96 F.4th 546, 559 (2d Cir. 2024) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996).  In the case of a hostile work environment claim involving an ongoing pattern of discrimination and harassment, only one harassing act must occur within the 300-day look-back period; once that is shown, a court may consider the entire time period of the hostile environment.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).  As will be described further below, this Court should not dismiss any claims arising out of acts taking place prior to 300 days before Vannier's filing of his EEOC Charge.  All of the actions alleged in this lawsuit form an interrelated pattern of gender-based mistreatment and abuse that Vannier experienced for years while employed with Defendants, including well into the 300-day period before he filed his EEOC Charge.

---

[2] When dealing with discrete actions, such as a termination, a plaintiff must timely file a Charge of Discrimination with the EEOC within 300 days after that act occurred, as a prerequisite to filing Title VII claims in federal court. *See* 42 U.S.C.S. § 2000e-5(f)(1); *Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197 (RRM)(LB), 2012 U.S. Dist. LEXIS 33562, at *13 (E.D.N.Y. Mar. 13, 2012).

[3] While the New York State Human Rights law provides for a three-year statute of limitations, Plaintiff does not address this issue, because as stated above, he agrees to the Court dismissing his state law discrimination claims without prejudice so that he may refile them in New York State Court.

<u>**FACTS**</u>

Plaintiff respectfully refers the Court to the Federal Court Complaint ("Compl.") (ECF Dkt. No. 1) to review the facts alleged.[4]  It is axiomatic that in reviewing the sufficiency of the facts pled in this action, the Court should review the facts as set forth in the Complaint itself and avoid relying on the moving parties' version of the facts.  As alleged, the hostile work environment that Vannier experienced on the basis of being a transgender man, after disclosing his status to his superior in 2013, and then publicly coming out in 2018, continued in one form or another throughout <u>his entire employment with Defendants</u>.  This ongoing harassment included:

1. Refusing to officially acknowledge or document Vannier's gender identity as "male" in his personnel records.  Compl. ¶¶ 3, 38-39, 96-99.  Captain Colin Frasier ("Cptn. Frasier") told Vannier that the DOCCS personnel office refused Vannier's request to change his gender identity in his personnel records, stating: "That is how she [sic] came into the department and it stays that way."  Compl. ¶ 97.

2. Isolating and further rejecting Vannier when several of Defendants' employees, including supervising officers such as Sergeant Pat Hendrix ("Srgnt. Hendrix") stopped speaking to Vannier except when giving a direct order, as well as stopped making eye contact with him.  This conduct began when Vannier formally came out as a transgender man in 2018.  Compl. ¶ 54.

3. Maliciously misgendering Plaintiff by referring to Vannier as "she," not "he," well after staff and supervisors at Great Meadow were aware that Plaintiff was a transgender man and had requested to be referred to using "he."  Compl. ¶¶ 45-52, 89-90, 104-106.  This included mocking Vannier when he asked them to use his correct pronouns.  Not only was this conduct offensive and humiliating to Vannier, but it riled up the incarcerated

---

[4] Plaintiff does not dispute that the EEOC Charge may be considered by this Court without converting Defendants' motion to one for summary judgment.  *See Fichera v. State Univ. of N.Y.*, No. 5:04-cv-0078, 2007 U.S. Dist. LEXIS 72186, at *10-11 (N.D.N.Y. Sept. 27, 2007).

male population who began reacting violently and referring to Vannier using slurs such as "d*ke." Compl. ¶ 49.

4. Regularly placing Vannier in physical danger as part of his job duties when supervisors would intentionally out Vannier as transgender, causing these same male prisoners to aggressively resist being strip searched or frisked. Compl. ¶¶ 8, 48-52, 118.

5. Creating a prison environment where incarcerated transgender prisoners were mistreated on a regular basis because of their gender, which Vannier was regularly subjected to watching. Compl. ¶ 119.

6. Subjecting Vannier to belittling slurs and vicious insults that were regularly made to Plaintiff's face by his supervising officers and sometimes coworkers. These statements included comments such as "biff" (slang for vagina), "c*nt," "d*ke," and "f*ggot." He was also addressed as "Add-a-Dick-to-Me," "not a real man," and "an offense to god," on a regular basis. Compl. ¶¶ 4-6, 60, 62-67, 69-70, 74, 80-83, 105-110.

7. Requiring Vannier to attend annual LGBTQ+ anti-discrimination trainings for Great Meadow's employees, presumptively created by Defendant DOCCS and given by Great Meadow's staff or outside consultants. At these trainings, instead of teaching about anti-discrimination laws and an inclusive work culture, Vannier was belittled and further outed. Compl. ¶¶ 126-131.

The above conduct continued on a regular basis from about the time Vannier first publicly came out as a transgender man through to the end of his employment. Compl. ¶¶ 2-5, 45, 53-54, 61, 67.

Against this ongoing pattern of regular instances of gender-based harassment, numerous other incidents of discriminatory conduct occurred at Vannier's worksite. While these incidents

were discrete acts, they also form part of the same pattern of discriminatory conduct described above.  These incidents include, but are not limited to the following:

1.  Forcing Vannier to "keep quiet" about his gender identity for years, i.e. between 2013, when he first revealed to Captain Rod Eastman ("Cptn Eastman") that he was going to transition, and 2018, when he publicly announced he was a transgender man.  Compl. ¶¶ 33-40.  This order from his superior placed Vannier in the untenable and uncomfortable position of not being able to change from civilian clothes into his uniform in either the male or female locker room, and having to come to work early to secretly change into his uniform.  Compl. ¶¶ 41-44.

2.  Vandalizing Vannier's locker after he was finally allowed to use the male employees' locker room in 2018.  Compl. ¶¶ 55-57.

3.  Subjecting Vannier to the humiliation of having his name graffitied on the male employees' bathroom walls using offensive language and epithets such as "suck a dick," and being humiliated when male incarcerated individuals made comments after being ordered to remove the graffiti from the walls.  Compl. ¶¶ 58-61.

4.  Threatening Plaintiff's safety when in 2021 another Corrections Officer repeatedly called Vannier a "c*nt" while chasing Plaintiff up a flight of steps at Great Meadow, causing Plaintiff to fear for his safety.  Compl. ¶¶ 68-71.

5.  Denying Vannier a job for a Relief Position because it was for "men only," and being told by his superior, Lieutenant Peter DePalo ("Ltnt. DePalo"), the head of staffing at Great Meadow, that he "wasn't a real man."  Compl. ¶¶ 64, 72-76.  While Vannier eventually obtained the Relief Position, the stigma of being told he could not get a job because he wasn't a "real man" was long lasting.

6.  Downgrading Vannier's performance review in 2021 after he complained to Sergeant Claudia Collins ("Srgnt. Collins"), his then supervisor, about being misgendered again

and again.  Srgnt. Collins's response to Vannier's pleas to be accorded the same respect as any other male Corrections Officer was met with distain and ridicule.  Specifically, she told Vannier that she could address him as she liked, or that she could "do the f*ck" whatever she wanted.  Compl. ¶¶ 87-94.  Although the review was ostensibly corrected and upgraded to reflect Vannier's true performance, as of 2022, that corrected review was never placed into Plaintiff's personnel record.  Compl. ¶ 95.

7. Demanding that Vannier drop whatever he was doing while employed in the Relief Position to collect his superior's garbage.  In these situations, Ltnt. DePalo would taunt Plaintiff by telling him that he was not a "real man," if he did not drop whatever he was doing to oblige his demands.  Compl. ¶¶ 82-83.

8. Mocking and misgendering Vannier during a meeting Plaintiff asked to have with his union representative and Ltnt. DePalo in an attempt to get the harassment to stop. Compl. ¶¶ 84-86.

9. Berating Vannier for an alleged problem with his work whereby Plaintiff's then superior Sergeant Hamel ("Srgnt. Hamel"), screamed at him in a threatening manner and called him "an asshole," and a "piece of shit."  Vannier had never seen Srgnt. Hamel yell in this fashion at any other Corrections Officer.  Prior to that time, Srgnt. Hamel made known to Plaintiff that he did not approve of his transitioning.  Compl. ¶¶ 111-117.

Taken together, the consistent pattern of harassment targeted toward Vannier on the basis of his gender identity is more than sufficient to sustain a plausible hostile work environment claim on the face of the Complaint.  This hostile work environment began in 2013 and went on for years, continuing well into the 300-day period before Vannier filed his EEOC Charge.

6

# LEGAL ARGUMENT

### A.  Standard for a Motion to Dismiss [5]

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), provides that a party may seek to dismiss a complaint where the plaintiff has failed to state a claim upon which relief can be granted.  To survive a motion to dismiss, the complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  In making this determination, courts "must take the allegations [in the complaint] as true." *Id*. at 696. Moreover, the court must "draw all inferences in the non-moving party's favor" and cannot dismiss the case "unless it is satisfied that the complaint cannot state any set of facts that would entitle him to relief." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

The Second Circuit has "repeatedly cautioned against setting the bar too high" at the pleading stage, emphasizing that plaintiffs need not plead a prima facie case in order to survive a motion to dismiss. *Spencer v. Global Innovative Grp., LLC*, No. 17 Civ. 7604 (PGG) (BCM), 2023 U.S. Dist. LEXIS 184012, at *21 (S.D.N.Y. Oct. 12, 2023) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).  In relying upon this broad standard, a plaintiff is *not* required to set forth all facts on which they rely to support their claims. *See Watson v. Am. Red Cross Blood Servs.*, 468 F. Supp. 2d 484, 488 (W.D.N.Y. 2007).  Indeed, at the motion to dismiss stage, a court "cannot weigh the sufficiency of the evidence to support a conclusion that plaintiff

---

[5] As Plaintiff agrees to have the Court dismiss his New York State Human Rights Law claims without prejudice, Defendants' motion to dismiss those claims for lack of subject matter jurisdiction is now moot.

was subjected to a hostile work environment.  Rather, the Court may determine only whether plaintiff is entitled to offer such evidence *on even the remote possibility of such a conclusion*." *Id*. at 489 (emphasis added).  *See also Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638-39 (2d Cir. 2005) (holding that at the pleading stage, "it is not necessary for the district court to determine which party shall ultimately prevail," but rather only whether the plaintiff is entitled to offer evidence to support the claim).  Based on the continuing nature of the harassment which Vannier experienced for years while employed with Defendants, the Court should not dismiss any claims as untimely.

**B.** **Plaintiff's Title VII Claims Are Timely in Their Entirety and Should Not Be Dismissed**

Defendants argue that the Court should dismiss as untimely any claims arising out of Defendants' conduct that occurred before the 300-day look-back period from when Plaintiff filed his EEOC Charge.  Defendants' argument is wrong.

As the United States Supreme Court recognized in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), hostile work environment claims present an exception to the 300-day rule applying to the statutory time within which a plaintiff may file a timely claim with the EEOC.  *Id.* at 117.  Title VII "does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability." *Id*. at 118.  This is because "hostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct." *Id*. at 115.  Indeed, a single act of harassment may not be actionable on its own; instead, hostile work environment claims are "based on the cumulative effect of individual acts." *Id*.  As such, in hostile work environment claims, the statute of limitations "requires that *only one ... harassing act* demonstrating the challenged work environment occur within 300 days of filing; once that is shown, a court and jury may consider

'the entire time period of the hostile environment' in determining liability." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117) (emphasis added).

>   1. *Vannier Was Harassed and Discriminated Against on the Basis of His Gender Beginning Years Before the 300 Day Look Back Period and Continuing Until the End of His Employment*

In determining whether particular discriminatory acts are part of the same actionable hostile work environment practice, courts consider whether incidents of discrimination both pre and post the 300-day statute of limitations period involve similar conduct, occurring on a regular basis, perpetrated by some or all of the same managers. *See Morgan*, 536 U.S. at 120 (internal citations and quotations omitted). *See also Beattie v. Farnsworth Middle Sch.*, 143 F. Supp. 2d 220, 227 (N.D.N.Y. 1998) (considering the "type, frequency, and severity" of the conduct contributing to a hostile work environment claim to determine whether there is a continuing violation). For example, the plaintiff in *Morgan* presented evidence that multiple managers made discriminatory jokes and comments, performed discriminatory acts, and used various racial epithets, both before the 300-day filing period, and continuing throughout it. *Morgan*, 536 U.S. at 120. On this evidence, the Supreme Court found that all these acts, even those which occurred outside the 300-day filing period, were part of the same actionable hostile work environment claim. *Id*.

Similarly, here, Vannier was subjected to a pattern of discriminatory comments, slurs, and misgendering on a regular basis beginning as far back as 2013 and continuing well into the 300-day statutory period. As the Complaint makes clear, as early as 2013 when Vannier told his supervisor that he was in the process of beginning to transition, Plaintiff was told to keep his gender identity hidden. Compl. ¶¶ 33-35. Thereafter, for years, Vannier was required to use the

female locker room before female Corrections Officers arrived to work and to hide his gender identity as a transgender man.  Compl. ¶¶ 41-44.

Beginning in 2018, when Vannier was allowed by Defendants to publicly came out as a transgender man – and therefore was no longer required to hide his identity – Plaintiff faced an ongoing, multi-year campaign of harassment toward him on the basis of his gender identity. This conduct included being insulted, belittled, ostracized, and misgendered, both before and during the 300-day statutory period, placing his mental health and physical safety in constant jeopardy.  Compl. ¶¶ 45-54, 62-67, 69-71, 80-83, 85, 89-91, 96-98, 101, 105-108, 112, 114, 123-125.

Defendants' assertion that Plaintiff has not alleged any harassing comments within the 300-day period is false.  Defs' MOL, at p. 9.  Rather, as stated plainly, Vannier was subjected to ongoing belittling and humiliating comments and other disparate treatment on the basis of his gender identity.  These comments began in 2018 and continued  on a regular basis throughout 2022, well within the filing period.  *See generally* Compl. (demonstrating an ongoing pattern of overt discrimination beginning in 2013, and of offensive harassment beginning in 2018 through to Vannier's last day of work).  Moreover, the same supervisors were primarily involved in harassing Vannier throughout his employment.  These include: Ltnts. DePalo and Mulligan, and Srgnts. Hendrix and Collins, all of whom had supervisory authority over Vannier.  *Id.*

> 2. *Discrete Actions Which Took Place Before the 300 Day Look Back Period May Be Considered as Part of the Ongoing Hostile Work Environment Vannier Experienced During His Employment*

In the present case, Defendants attempt to focus the Court's attention on six incidents of discrimination that occurred while Vannier was employed by Defendants at Great Meadow, all of which occurred before the 300-day look-back period.  Defendants erroneously suggest that

these incidents were sporadic and unrelated to the ongoing pattern of harassment that Vannier encountered at the prison for nearly nine years. Defs' MOL, at pp. 3-4. Discrete actions, however, are not always separate, unrelated acts which would trigger an independent statute of limitations issue each time one occurred. As recently noted by the Second Circuit in *King v. Aramark Servs.*, 96 F.4th 546, (2d Cir. 2024), even "discrete acts" of discrimination can support a hostile work environment claim under Title VII if they are motivated by the same discriminatory animus. *Id.* at 561. A careful reading of each of these incidents as actually alleged in the Compl. (and not downplayed by Defendants in their MOL) shows that those incidents are part of the interrelated pattern of harassment that Vannier endured as part of his workplace experience at Great Meadow. Each was not a permanent decision which impacted a tangible aspect of Plaintiff employment. Rather, each represents another example of when supervisory employees – especially Ltnt. DePalo – took the opportunity to humiliate and degrade Vannier on the basis of his gender identity.

For example, there can be no mistake that Ltnt. DePalo discriminated against Vannier on the basis of his transgender status by preventing him from obtaining the Relief Position in 2018, allegedly because it was designated as a "male only" position, or by telling Vannier that he was ineligible for the position because he was "not a real man." Compl. ¶¶ 72-76. Rather than this discrimination resulting in the deprivation of a job opportunity for Plaintiff (Vannier ultimately obtained the position due to his union's intervention), the main impact of this conduct was to humiliate Vannier on the basis of his gender identity. This is the same type of conduct that Vannier endured for years both before and well into the 300-day filing period when his supervisors belittled and humiliated Vannier because he was a transgender man, much of that conduct instigated by Ltnt. DePalo. *See, e.g.,* Compl. ¶¶ 72-76, 80, 83.

Furthermore, the downgrading of Plaintiff's evaluation in 2021 by Srgnt. Collins, when Vannier repeatedly objected to her misgendering him, should not be viewed in isolation as a one-time act. As Plaintiff alleges, after he complained about Srgnt. Collins downgrading this evaluation, it was ostensibly corrected (although not placed in his employee file). Compl. ¶¶ 87-95. What is significant however, is the intent surrounding Srgnt. Collins's response to Plaintiff's plea for her to stop misgendering him. When asked to stop referring to Plaintiff as "her," Srgnt. Collins told Vannier she could do whatever "the f*ck" she wanted. Compl. ¶¶ 89-90. This failure to acknowledge Vannier's gender identity had existed for years on the part of Srgnt. Collins. After Vannier formally came out in 2018, she practically stopped talking to Vannier and began to intentionally misgender him. Compl. ¶ 89. It also falls into the exact same type of conduct that Plaintiff experienced for years at the prison; that is, that supervisory employees at Great Meadow would not recognize Plaintiff as a man and harassed him because of his transgender status. *See generally* Compl. Similarly, the threatening behaviors Vannier endured from his coworker Corrections Officer Ely, as well as having to endure being berated by his supervisor Srgnt. Hamel, while discrete acts, were part of the ongoing discriminatory treatment Vannier experienced because of his transgender status while employed by Defendants. Compl. ¶¶ 68-71, 111-117.

Finally, Defendants' reliance on *Beattie v. Farnsworth Middle Sch.*, 143 F. Supp. 2d 220 (N.D.N.Y. 1998) (citing *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971 (5th Cir. 1983)) is misplaced both factually and legally. In *Beattie*, this Court refused to apply the continuing violation theory now well recognized by all circuits since the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) to a case where the plaintiff sought to bring Title VII claims for incidents of sexual touching, leering, and offensive comments.

*Beattie*, 143 F. Supp. 2d at 224.  These actions occurred more than 300 days before she filed her EEOC Charge (her claims for retaliation and intimidation that occurred within that 300-day period were allowed).  *Id.* at 227-28.  Relying on *Berry*, a 40-year-old holding from an out of Circuit case, the *Beattie* Court used a three-part test that has never been adopted by the Second Circuit to find that the discriminatory conduct of which Beattie complained that occurred over 300 days prior to filing the EEOC Charge was statutorily barred.  *Id.*

The facts of the present case are easily distinguished from those of *Beattie*.  First, the Court in *Beattie* looked at the "type, frequency, and severity of conduct involved in the… two sets of allegations" brought by the plaintiff: those before and those after the 300-day look back period.  *Id.* at 227.  It found that those actions occurring before and after that statutory period were not similar enough to consider them as part of one Title VII claim.  *Id.*  In the present case, those actions complained of by Vannier are significantly similar, if not identical, both before and after the 300-day look-back period.  Second, the Court in *Beattie* found that there were no recurring instances of the same conduct that occurred before and after the 300-day statutory period.  *Id.*  In the present case, however, while there were some discrete actions before the 300-day look-back period, the Compl. also clearly alleges a consistent pattern of insults, humiliation, misgendering, and ostracizing of Vannier beginning in about 2013 and continuing through to the end of Plaintiff's employment in August of 2022.  Moreover, the more discrete actions that occurred before the 300-day look-back period were carried out by many of the same supervisors (Ltnt. DePalo, Srgnt. Collins, Srgnt. Hendrix, and others) and involved the same animus as the actions targeting Vannier during the Filing Period, specifically transphobia. *See generally* Compl.

Finally, the Court in *Beattie* relied on the "sufficient severity" or permanence of the conduct which Beattie alleged took place up to two years before she filed her EEOC Charge to hold that she should have filed that Charge within 300 days of those acts. *Beattie*, 143 F. Supp. 2d at 227. This finding resulted in the dismissal of her sexual harassment allegations. *Id*. The argument that a plaintiff should file charges after each incident of workplace hostility, when that conduct is ongoing and forms part of one, continuous unlawful employment practice, has been effectively overruled by the Supreme Court's decision in *Morgan*. As stated by the Supreme Court:

> The statute does not contain a requirement that the employee file a charge prior to 180 or 300 days "after" the single unlawful practice "occurred." Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan,* 536 U.S. at 117-18. *See also Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821 (RPP), 2012 U.S. Dist. LEXIS 3665, at *30 (S.D.N.Y. Jan. 11, 2012). As such, the fact that Vannier did not file a complaint with the EEOC sooner does not and should not bar this Court from considering as part of Vannier's hostile work environment claim conduct which occurred before the Filing Period where those actions form the basis of one timely cause of action under Title VII.

3. *Plaintiff's Constructive Discharge on August 4, 2022 Was the Culmination of Years of Overt Hostility and Abuse Vannier Suffered at the Prison on the Basis of His Gender Identity*

Defendants do not deny that the August 4, 2022 incident where Vannier was forced out of the job is a timely action in the pending Complaint. Defs' MOL, at p. 11. To the extent that Defendants rely on their argument that Vannier's constructive discharge claim is the only actionable claim in this lawsuit, their argument should fail. The Second Circuit has held that "a

14

discrete act that furthers a discriminatory policy and occurs within the limitations period" can render timely a hostile work environment claim based upon that policy. *King v. Aramark Servs.*, 96 F.4th 546, 560 (2d Cir. 2024). In *King*, the Second Circuit held that because the plaintiff's termination, which occurred within the 300-day filing period, could be found by a jury to be a part of the ongoing discriminatory pattern or practice of sex-based harassment that occurred outside the 300-day filing period, the entire hostile work environment claim was timely. *Id*. at 562. In that case, the termination was a part of the pattern or practice of harassment because the harasser responsible for the harassment that occurred outside the 300 day filing period "played a decisive role" in the plaintiff's termination. *Id*. *See also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 78 (2d Cir. 2010) (noting that the same harassing acts by the same harasser are more likely to be part of the same actionable hostile environment claim).

This is exactly the situation that occurred in the present case. While it is clear that no official written policy existed to discriminate against Vannier as a transgender man, the facts alleged in the Complaint make clear that a pattern and practice of humiliating and degrading Vannier on the basis of his gender identity was condoned by Defendants for years. *See King*, 96 F.4th at 559 (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) (holding that a "discriminatory policy" in the workplace may stem from ongoing harassment against a plaintiff that remains unredressed).

First, the harassment leveled against Vannier was almost unilaterally perpetrated by Plaintiff's supervisors at Great Meadow, including Ltnt. DePalo, Srgnt. Collins, Ltnt. Mulligan and Srgnt. Hamel, individuals with the authority to affect the terms and conditions of Vannier's employment. *See generally* Compl.

15

Second, Defendants' actions toward Vannier were clearly sanctioned and supported at the highest levels of management at Great Meadow and the DOCCS. This conduct included, but was not limited to, prohibiting Vannier from disclosing his gender identity between 2013 and 2018, requiring him for years to secretly change in and out of his uniform in the women's locker room (Compl. ¶¶ 31-44), refusing to change Vannier's official personnel records to reflect his male gender (Compl. ¶¶ 33-44), subjecting Plaintiff to more dangerous workplace conditions than other Corrections Officers (Compl. ¶¶ 45-52), downgrading Plaintiff's performance evaluation because Vannier sought to be addressed by male pronouns (Compl. ¶¶ 87-95), using the posting of an important job at the prison as a way to mock Plaintiff's gender identity (Compl. ¶¶ 72-76), isolating Vannier from day-to-day contact with some of his supervisors (Compl. ¶¶ 53-54, 84-86), humiliating Vannier in front of subordinate employees and the incarcerated male population on a regular basis (Compl. ¶¶ 45-52, 80-83), and forcing Vannier to be tokenized and outed at Defendants' LGBTQ+ anti-discrimination trainings, which further humiliated Vannier (Compl. ¶¶ 126-131).

Specifically, it should be noted that the harassers responsible for the August 4, 2022 incident in which Plaintiff was assigned to work in an uninhabitable room with human and bird feces covering the walls and floor, black mold, and a clear insect infestation, were Ltnt. Mulligan, who at that time was in charge of prison-wide staffing, and Srgnt. Hendrix. Compl. ¶¶ 132-145. Both of these individuals had engaged in prior repeated incidents of gender-based harassment toward Vannier between 2018 and 2022: Ltnt. Mulligan was hostile towards Vannier as early as 2018, after he came out as transgender and repeatedly referred to him as "biff," a slang term that can refer to a vagina, and Srgnt. Hendrix refused to acknowledge or speak to Vannier (other than to give him a direct order) and refused to make eye contact after he came out

16

as transgender.  Compl. ¶¶ 53-54, 66-67.  As such the assignment to the uninhabitable room on

August 4, 2022 is plausibly linked to this ongoing pattern of repeated harassment toward Vannier

by the same supervisors involved in the events of that last day.

Taking the allegations in the Complaint as true, and drawing all inferences in the

Plaintiff's favor, as the Court must on a motion to dismiss, Plaintiff has plausibly alleged that his

constructive discharge was part of the same ongoing pattern of gender identity discrimination

that occurred prior to the 300-day filing-period, rendering his entire hostile work environment

claim timely.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009); *Patel v. Contemporary Classics

of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

## <u>CONCLUSION</u>

For the reasons and arguments cited above in this Memorandum of Law, Plaintiff

respectfully requests that the Court deny Defendants' Motion to Dismiss as to any claims related

to his hostile work environment claim under Title VII.  As also stated above, Plaintiff does not

contest the dismissal of his claims under the New York State Human Rights Law, without

prejudice, so to give Plaintiff the opportunity to refile those claims in New York State Court.


Dated:  Brooklyn, New York
         August 16, 2024

Respectfully submitted,

GENDER EQUALITY LAW CENTER

By:   /s/ Vico D. Fortier_____
Vico D. Fortier
Allegra L. Fishel
157 13th Street
Brooklyn, New York 11215
Tel: 347-844-9003
vfortier@genderequalitylaw.org

cc:     By ECF ONLY
        Alexander Powhida, Esq.
        Assistant Attorney General
        New York State Office of the Attorney General
        Litigation Bureau
        The Capitol
        Albany, New York 12224