UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ASHLEY VANNIER

            Plaintiff,

      -v-                    1:24-CV-324

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SERVICES and GREAT MEADOW
CORRECTIONAL FACILITY,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

GENDER EQUALITY LAW         ALLEGRA L. FISHEL, ESQ
  CENTER                            VICO D. FORTIER, ESQ
Attorney for Plaintiff
157 13th Street
Brooklyn, NY 12307

STATE OF NEW YORK            ALEXANDER POWHIDA, ESQ
  ATTORNEY GENERAL,
    ALBANY OFFICE
Attorneys for Defendants
6 Tower Place
Albany, NY 12203


DAVID N. HURD
United States District Judge

# AMENDED DECISION and ORDER[1]

## I. INTRODUCTION

On March 6, 2024, plaintiff Ashley Vannier ("Vannier" or "plaintiff"), a former corrections officer by at the New York State Department of Corrections and Community Services ("NYSDOCCS") and Great Meadow Correctional Facility ("GMCF") (collectively, "defendants"), filed this civil rights action for alleged employment discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL").  Dkt. No. 1.  Plaintiff is seeking money damages and injunctive relief.[2]  *Id*.

On July 5, 2024, defendants moved to partially dismiss Vannier's complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and (6) for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 11.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 1, 11, 15.

---

[1] This Amended Decision and Order supersedes the previous Decision and Order (Dkt. No. 16) pursuant to Federal Rule of Civil Procedure 60(a).  Rule 60(a) provides that a court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.  The court may do so on motion or on its own, with or without notice.  FED. R. CIV. P. 60(a).

[2] Plaintiff also seeks injunctive relief whereby DOCCSS is ordered to remedy its policies and practices to comply with Title VII and the NYSHRL and to affirmatively act to ensure that, in the future, the effects suffered by Vannier during and after his gender transition are never again endured by Vannier or any other future employees.  *See id*.

## II. **BACKGROUND**

The following facts are taken from Vannier's complaint, Dkt. No. 1, and will be assumed true for purposes of assessing defendants' motion to dismiss.

Vannier is a transgender man.  Compl. ¶1.  From 2012 until August 2022, Vannier worked as a corrections officer for NYSDOCCS and was assigned to GMCF.  *Id*.  When Vannier was hired by NYSDOCCS, he initially presented as a woman.  *Id*. ¶ 2.  But plaintiff soon began the process of physically "transitioning" to become a male.  *Id*.

In 2013, Vannier began taking testosterone and underwent multiple procedures to complete his physical "transition."  *Id*. ¶ 2.  But as plaintiff started "transitioning" publicly, he also began to experience hostility and abuse from his coworkers and supervisors relating to his gender identity.[3]  *Id*.

In 2018, Vannier formally announced that he identified as a man at work.  Compl. ¶ 2.  But in response, his co-workers refused his requests to use male pronouns and intentionally misgendered him for the remainder of his tenure with NYSDOCCS.  *Id*. ¶ 4.  Vannier's co-workers and supervisors at GMCF taunted him using his prior female pronouns and laughed at him when this

---

[3] Further, in the fall of 2013, plaintiff informed one of his supervisors at GMCF that he was about to undergo the first of several gender transition surgeries.  Compl. ¶ 33.  Plaintiff indicated he would be making several requests including transfer from the male to female locker room at GMCF. *Id*.  This supervisor ordered Vannier to keep quiet about transition until his final surgery was completed before requesting workplace accommodations. *Id*. ¶ 34.

upset him.[4]  *Id*. ¶ 5.  And the abuse was not solely verbal.  *Id*.  On one occasion, plaintiff's supervisors and co-workers vandalized his locker, defacing it with derogatory graffiti that referred to plaintiff by name and filling it with spit and chewing tobacco.  *Id*. ¶ 6.

In 2018, Vannier was also physically threatened and, on at least one occasion, chased up a flight of stairs by another NYSDOCCS employee while co-workers and supervisors continued to taunt and ridicule him about his gender identity.  Compl. ¶ 7.  Not only that, but plaintiff's gender transition was disclosed to the incarcerated male population at GMCF, further jeopardizing his safety.  *Id*. ¶ 8.

Beyond the day-to-day hostility Vannier faced at GMCF following his transition, he began to struggle at work.  Compl. ¶ 9.  After presenting as a male, plaintiff was denied a job opportunity after a supervisor told him that he was not a "real man."  *Id*.  Thereafter, plaintiff received an unfavorable employment evaluation after he protested the intentional misgendering perpetrated by his supervisors.  *Id*. ¶ 9.  All the while, plaintiff's supervisors assigned him tasks that were demeaning, dangerous, or both.  *Id*.

---

[4]  Specifically, co-workers told Vannier he "was not a real man," could not change his female DNA, that he was an "offense to God." Compl. ¶ 4.  After presenting as a man at GMCF, plaintiff was referred to by co-workers and supervisors with derogatory terms such as "add a dick to me," "cunt," "dyke," "queer," and "faggot." *Id*. ¶ 5.

In response, Vannier lodged complaints with his GMCF supervisors and his union representation regarding the adverse and hostile treatment. Compl. ¶ 11.  But plaintiff's complaints were ignored.  *Id*.  GMCF was later provided with on-site mandatory LGBTQ+ anti-discrimination training.  *Id*. ¶ 12.  However, during the training, the anti-discrimination trainer actually ended up ridiculing and "out[ing]" plaintiff.  *Id*. ¶ 12.

Vannier began to experience anxiety related to the harassment and discrimination he experienced on a daily basis at GMCF.  Comp. ¶ 13.  By April 2021, plaintiff's anxiety escalated to the point where his blood pressure was significantly elevated despite having no history of cardiovascular issues. *Id*. ¶ 14.  Plaintiff's doctors concluded that his high blood pressure was correlated to his stress.  *Id*. ¶¶ 14, 116.  As a result, plaintiff was ordered to take a short-term medical leave and was not permitted to return until his blood pressure decreased.  *Id*.

In May 2021, Vannier was able to return to work at GMCF.  Compl. ¶¶ 15, 117.  But the hostility plaintiff faced at GMCF continued through the end of 2021 and into early 2022.  *Id*. ¶¶ 15, 18–19.[5]  As a result, plaintiff's anxiety and high blood pressure returned.  *Id*.  Then, in February of 2022, plaintiff suffered a heart attack.  *Id*.  Afterwards, plaintiff's doctors informed him that

---

[5] But plaintiff only alleges harassment in late 2021 and early 2022 perpetrated by inmates, not staff.  Compl. ¶ 118–119.

the heart attack was related to high levels of stress, and he was ordered to take another leave of medical absence.  *Id*. ¶ 16.   But when Vannier returned to GMCF, he faced the same gender identity-based hostility as before.  Compl. ¶ 17.

On August 4, 2022, Vannier suffered a major anxiety attack when various GMCF supervisors assigned him duties which placed him in physical jeopardy.  Compl. ¶ 18.  When plaintiff later protested this assignment, he was re-assigned to work on prisoner logs out of a room at GMCF that was uninhabitable.[6]  *Id*.  Plaintiff later informed a co-worker that he intended to protest this re-assignment due to the condition of his workspace.  *Id*.  Soon after, plaintiff's supervisors threatened to terminate his employment if he filed any grievances with his union.[7]  *Id*. ¶ 19.

During this major anxiety attack, plaintiff's symptoms included a racing heart, chest pain, difficulty breathing, and dizziness.  Compl. ¶ 19.  Vannier then sought immediate medical attention.  *Id*.  Since that day, plaintiff has been unable to work, and NYSDOCCS terminated his employment.  *Id*. ¶ 21.

---

[6] Vannier was re-assigned to a room in the back of the GMCF facility to work on prisoner activity logs.  Compl. ¶ 138.  When Vannier first visited this room, he noted that the floors, walls, and furniture were covered in bird feces.  *Id*. ¶ 139.  There was no running water nor a usable bathroom.  *Id*.  The room was infested with insects, there was black mold on the walls, and human feces on the floor.  *Id*.  And because the furniture was covered in bird feces, Vannier had no desk or chair from which to work.  *Id*.

[7] Presumably, plaintiff told a co-worker that he intended to file a grievance with the union protesting the physically precarious assignment that he was prescribed.

Plaintiff continues to experience anxiety and depression related to the hostility and harassment he faced at GMCF. *Id*. ¶ 22.

On October 10, 2022, Vannier filed a complaint with the Equal Employment Opportunity Commission (the "EEOC").[8] Dec. of Powhida, Dkt. No 11-3 at 1. On December 8, 2023, the EEOC issued Vannier a right to sue letter. *Id*. This lawsuit followed.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). Rule 12(b)(1) motions may be either facial or fact-based. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

Facial Rule 12(b)(1) motions are "based solely on the allegations of the complaint . . . and exhibits attached to it[.]" *Id*. To resolve a facial motion,

---

[8] Notably, plaintiff neither refers to the date of their EEOC complaint in the complaint nor have they attached a copy of it as an exhibit. Defendants have instead appended plaintiff's EEOC complaint to their moving papers. Under Rule 12, courts may consider extraneous documents "[where] the plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[.]" *Chambers v. Time Warner, Inc.*, 272 F.3d 147, 153 (quoting *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)). Here, plaintiff is most certainly on notice of their own EEOC complaint. Thus, plaintiff's EEOC complaint may be properly considered by the Court for the purpose of this motion to dismiss.

the district court must "determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (cleaned up).  In doing so, the district court "must accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Wagner v. Hyra*, 518 F. Supp. 3d 613, 623 (N.D.N.Y. 2021) (quoting *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020)).

By contrast, a defendant who makes a fact-based Rule 12(b)(1) motion submits extrinsic evidence.  *Carter*, 822 F.3d at 57.  If the defendant's extrinsic evidence reveals a dispute of fact whether jurisdiction is proper, plaintiff must proffer evidence to controvert the defendant's evidence.  *Id*. To resolve a fact-based motion, the district court must then make findings of fact to determine whether plaintiff has standing to sue.  *Id*.

### B. **Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. <u>DISCUSSION</u>

Vannier's complaint sets forth claims under Title VII and the NYSHRL for (1) retaliation; (2) a hostile work environment; and (3) constructive discharge.[9] Compl. ¶¶ 1–172. Defendants have moved to partially dismiss Vannier's complaint on jurisdictional grounds. Defs.' Mem., Dkt. No. 11-2. Specifically, defendants argue that (1) this Court lacks subject matter jurisdiction over plaintiff's state-law claims because defendants are immune from suit in federal court for state law claims under the Eleventh Amendment; (2) that any portion of plaintiff's Title VII claims arising out of

---

[9] Plaintiff's complaint is not particularly transparent as to what legal theories he is pursuing under Title VII or NYSHRL. The complaint lists two counts: gender-based discrimination under Title VII and NYSHR, respectively. Upon review, in addition to plaintiff's discrimination claim, it is clear from the complaint that plaintiff is pleading a hostile work environment claim and a constructive discharge claim. And while murkier, it also appears that plaintiff brings a retaliation claim. Accordingly, the Court will review this as four distinct claims for 1) discrimination, 2) constructive discharge, 3) a hostile work environment, and 4) disparate treatment.

acts of discrimination that occurred greater than three hundred days before plaintiff filed his complaint with the EEOC must be dismissed; and (3) that any portion of plaintiff's NYSHRL claims arising out of acts of discrimination that occurred greater than three hundred days before plaintiff filed his complaint with the EEOC must be dismissed. Defs.' Mem., Dkt. No. 11-2 at 5–11.

**A. <u>NYSHRL Claims</u>**

As a threshold matter, defendants argue that the Court lacks subject matter jurisdiction to adjudicate Vannier's NYSHRL. Defs.' Mem. at 2, 5–7. The Court agrees.

State governments and their agencies may not be sued in federal court unless they waive their Eleventh Amendment immunity or Congress validly abrogates that immunity. *Panagopoulos v. New York State Dep't of Transportation*, 172 F. Supp. 3d 597, 627 (N.D.N.Y. 2016) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

New York State has not waived its Eleventh Amendment immunity with respect to the NYSHRL, nor has it consented to suit in federal court. *Muslom v. Sagamore Children's Psychiatric Ctr.*, 2024 WL 3431959, at *10 (E.D.N,Y. July 15, 2024) (collecting cases). NYSDOCCS and, by virtue,

GMCF, are agencies of the State of New York. *See e.g.*, *Nicholas v. Tucker*, 89 F. Supp. 2d, (S.D.N.Y. 2000).

Therefore, defendants are immune from suit in federal court for NYHSHRL claims. Moreover, in his opposition papers, plaintiff appears to consent to the dismissal of their NYSHRL claims with the desire to re-file them in state court. Pl's Opp'n, Dkt. No. 14 at 1, 17. Accordingly, each of plaintiff's NYSHRL claims (Counts IV, V, and VI) will be dismissed.[10]

## B. <u>Timeliness of Plaintiff's Title VII Claims</u>

Next, defendants argue broadly Vannier's Title VII claims must be dismissed as untimely.[11] Defs.' Mem. at 1–2, 7–11. Plaintiff opposes. Pl.'s Opp'n, Dkt. No. 14 at 12–21.

---

[10] Defendants separately argue that plaintiff's NYSHRL claims should be dismissed because they were not brought within the relevant statute of limitations period. Defs.' Mem at 1–2, 11. Because these state law claims will be dismissed on account of another jurisdictional bar, the Court need not reach this argument.

[11] Defendants moving papers are somewhat unclear. While defendants have filed a *partial* motion to dismiss, they broadly urge the Court to find Vannier's "Title VII" claims untimely. Defendants have not specifically addressed plaintiff's constructive discharge claim. Insofar as defendants mean to move for dismissal of plaintiff's constructive discharge claim, that motion will be denied. Plaintiff's constructive discharge claim is timely. To bring a constructive discharge claim under Title VII, a plaintiff must plausibly allege that: (1) they were discriminated against by their employer to the point where a reasonable person in the same position would have felt compelled to resign and (2) they actually resign. *Green v. Brennan*, 578 U.S. 547, 555 (2016). Plaintiff alleges that on August 4, 2022, he was assigned to work on prisoner logs books in a room containing mold and feces with no usable furniture. Compl. ¶ 18. Thus, plaintiff has plausibly alleged that a reasonable person in his position would have felt compelled to resign. Plaintiff never returned to GMCF after that day and was terminated. Compl. ¶ 19. Accordingly, insofar as defendants' intended to dismiss plaintiff's claim of constructive discharge, it will be denied.

- 11 -

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  As the Supreme Court clarified in *Bostock v. Clayton Cnty.*, where an employer discriminated against an employee because they are transgender, the employer has discriminated against that person on the basis of their sex. 590 U.S. 644, 662 (2020).

Importantly, Title VII imposes a time limit by which plaintiffs must bring their claims: plaintiffs bringing Title VII claims based upon discrete discriminatory or retaliatory acts must file them within the appropriate time period set forth in 42 U.S.C. § 2000e–5(e)(1).  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).  In New York State, an aggrieved party must file a charge with the EEOC within 300 days of the occurrence of an unlawful discrimination practice.  *Morris v. New York State Police*, 268 F.Supp.3d 342, 364 (N.D.N.Y. 2017).

Defendants broadly argue that Vannier's discrimination, hostile work environment, and retaliation claims arise from acts or events that transpired greater than 300 days prior to plaintiff filing his discrimination charge with

the EEOC.  Defs.' Mem. at 1–2, 7–11.  Plaintiff argues in opposition that their Title VII claims are timely.[12]  Pl.'s Opp'n at 12–21.

To establish a claim for gender discrimination under Title VII, a plaintiff must plausibly allege: 1) they belonged to a protected class; 2) they were qualified for a position; 3) they suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003).  However, for the purposes of this motion, the inquiry is centered upon timeliness.

Upon review, plaintiff's Title VII claim for discrimination will be dismissed as untimely.  Plaintiff filed his EEOC claim on October 10, 2022.  Therefore, the statutory period during which plaintiff may base his discrimination claim begins on or after December 14, 2021.  Plaintiff has not alleged that he suffered any adverse employment actions on or after December 14, 2021.  Instead, plaintiff has pleaded facts which occurred prior to December 14, 2021.  These facts constitute discrete acts and are barred.  *Morgan*, 536 U.S. at 122; *Morris v. New York State Police*, 268 F. Supp. 3d 342, 364.  Therefore, plaintiff's discrimination claim is untimely.  Accordingly, plaintiff's discrimination claim will be dismissed.

---

[12] Plaintiff solely argues with specificity why their Title VII claims are timely with respect to their hostile work environment claims and constructive discharge claims.  Pl's Opp'n at 8.

Next, defendants argue that Vannier's retaliation claim is also untimely. Defs.' Mem. at 7–11. Plaintiff does address the timeliness of his retaliation claim in his opposition papers. Pl.'s Opp'n at 8–17.

Upon review, Vannier's retaliation claim will be dismissed. Plaintiff has not alleged that he participated in any protected activity. *See, e.g., Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (holding that to establish a prima facie case of retaliation under Title VII, an employee must show (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action). Protected activity is the crux of a retaliation claim. *Id*. Here, plaintiff has not alleged that he engaged in protected activity during the statutory period and thus, has failed to state a plausible retaliation claim. *Id*. Accordingly, plaintiff's retaliation claim will be dismissed.

Lastly, defendants argue that Vannier's hostile work environment claim is similarly untimely. Defs.' Mem. at 9–11. In opposition, plaintiff argues that his Title VII claims are timely because the harassment or discrimination he suffered prior to the statutory period were part of an ongoing hostile work environment at GMCF and constitute a continuing violation. Pl's Opp'n at 8.

As stated *supra*, plaintiffs bringing Title VII claims based upon discrete discriminatory or retaliatory acts must file them within the appropriate time

period set forth in 42 U.S.C. § 2000e–5(e)(1).  *Morgan*, 536 U.S. at 122.  However, there are exceptions to this rule.

One such exception is a claim for a hostile work environment: under Title VII, a hostile work environment is one which is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Unlike claims based on discrete acts of discrimination or retaliation, hostile work environment claims are often comprised of a "mosaic" of acts, that, in the aggregate, alter the conditions of the plaintiff's work environment.  *Id*. Where a plaintiff brings a hostile work environment claim premised on a series of acts that are part of the same ongoing, discriminatory employment practice *and* at least one act falls inside of the statutory period, the reviewing court may consider all of the acts.  *Morgan*, 536 U.S. at 122 (emphasis added); *King v. Aramark Services*, 96 F.4th 546, 561 (2d Cir. 2024).

Upon review, Vannier's hostile work environment claims under Title VII are timely.  Plaintiff has alleged that he suffered a series of discriminatory acts of intimidation, ridicule, and insults that occurred prior to December 14, 2021.  *See* Compl. ¶¶ 1–172.  Plaintiff also alleges that he suffered at least one other act took place on or after December 14, 2021 when defendants re-assigned plaintiff to an unsuitable workspace littered with feces and mold

without any usable furniture, bathroom, or running water. *Id.* ¶¶ 138–139. Thus, plaintiff has alleged that defendants subjected him to an ongoing discriminatory employment practice that went on from at least 2018 until 2022. As such, the Court may consider the entirety of plaintiff's allegations as they constitute a continuing violation. *See Morgan*, 536 U.S. at 122. In consideration of all of plaintiff's factual allegations, the Court finds that plaintiff has plausibly alleged that he endured a hostile work environment at GMCF. Accordingly, defendants' motion to dismiss plaintiff's hostile work environment claim will be denied.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Defendants' partial motion to dismiss plaintiff's complaint (Dkt. No. 11) is GRANTED in part and DENIED in part;

2. Defendants' motion to dismiss plaintiff's NYSHRL claims is GRANTED;

3. Defendants' motion to dismiss plaintiff's claim for discrimination under Title VII is GRANTED;

4. Defendants' motion to dismiss plaintiff's claim for retaliation under Title VII is GRANTED;

5. Defendants' motion to dismiss plaintiff's claim for hostile work environment under Title VII is DENIED;

6. Defendants' motion to dismiss plaintiff's claim for constructive discharge under Title VII is DENIED;

7. Defendants shall file and serve an answer to Plaintiff's hostile work environment and constructive discharge claims on or before February 13, 2025.

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.

*[Signature]*
David N. Hurd
U.S. District Judge

Dated: January 30, 2025
       Utica, New York.